UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GREYSTONE BANK,<br><br>             Plaintiff,<br><br>v.<br><br>BERNARD ROSENSON and CYNTHIA ROSENSON,<br><br>             Defendants. | 2:11-CV-00838-PMP-CWH<br><br>ORDER |

Presently before the Court is Plaintiff/Counterdefendant Greystone Bank's Motion to Dismiss Counterclaims (Doc. #10), filed on June 30, 2011. Defendants/Counterclaimants Bernard Rosenson and Cynthia Rosenson filed an Opposition (Doc. #11) on July 18, 2011. Plaintiff filed a Reply (Doc. #14) on July 28, 2011.

Also before the Court is Defendants/Counterclaimants Bernard Rosenson and Cynthia Rosenson's Motion for Leave to File First Amended Answer and Counterclaim (Doc. #17), filed on August 9, 2011. Plaintiff/Counterdefendant Greystone Bank filed an Opposition (Doc. #25) on August 26, 2011. Defendants/Counterclaimants Bernard Rosenson and Cynthia Rosenson filed a Reply (Doc. #27) on September 6, 2011.

**I. BACKGROUND**

Plaintiff Greystone Bank is a North Carolina chartered bank. (Pet. for Removal (Doc. #1), Ex. B ["Compl."] at 1.) In November 2007, Greystone Bank extended a $15 million loan to non-party BR Summerlin Property, LLC ("BR Summerlin"), a Nevada limited liability company, to fund a refinance of a nursing facility in Las Vegas, Nevada.

(Id. at 1-2.)  To secure the loan, in addition to other collateral, Defendants Bernard and Cynthia Rosenson executed guarantees in favor of Greystone Bank.  (Id. at 4-5.)  The initial guarantees were for twenty-five percent of the loan amount.  (Id. at 5.)

Greystone Bank and BR Summerlin agreed to several extensions of the maturity date and other amendments to the various loan documents.  (Id. at 5-7.)  In January 2010, the fourth amendment required the Rosensons to increase their guarantees from twenty-five percent to one hundred percent of the amount owed to Greystone Bank.  (Id. at 7.)

On September 8, 2010, Greystone Bank recorded a Notice of Breach and Election to Sell Under Deed of Trust with the Clark County Recorder.  (Id. at 8.)  In January 2011, BR Summerlin filed for bankruptcy.  (Id.)

Greystone Bank thereafter brought this suit in Nevada state court against the Rosensons on the guarantees.  The Rosensons answered and counterclaimed.  In their counterclaim, the Rosensons allege that Bernard Rosenson created BR Summerlin to facilitate his business of purchasing skilled nursing facilities and leasing them to third party operators.  (Ans. & Countercl. (Doc. #6) at 12.)  BR Summerlin initially financed the nursing facility at issue in this case through the original seller.  (Id.)  However, BR Summerlin needed long term financing, and BR Summerlin wished to obtain a Department of Housing and Urban Development ("HUD") loan.  (Id. at 13.)  Bernard Rosenson therefore sought out the assistance of a HUD loan expert.  (Id.)

The Rosensons allege that in 2007, Greystone Bank, through its sales agent, Ephraim Kutner ("Kutner"), offered to assist in obtaining a HUD loan.  (Id.)  The Rosensons allege that Kutner made various representations to them, including that Greystone Bank had a special relationship with HUD and that BR Summerlin would qualify for HUD refinancing.  (Id.)  Based on these promises, the Rosensons and BR Summerlin chose to forego other traditional financing and obtained a short-term loan from Greystone Bank to tide them over until the HUD loan was approved.  (Id.)  According to the

Rosensons, Greystone Bank represented to Bernard Rosenson that it could obtain HUD financing within a year and it could extend the maturity date if HUD financing was not obtained within that time. (Id.) The Rosensons allege that based on these promises, BR Summerlin took out the loan and the Rosensons personally guaranteed the loan. (Id. at 14.)

The Rosensons allege that the HUD financing never went through and Greystone Bank knew or should have known that BR Summerlin was ineligible for HUD financing. (Id.) According to the Rosensons, Greystone Bank nevertheless continued to represent that it would extend the loan maturity date until HUD financing was obtained, but in January 2010, Greystone Bank threatened to foreclose after the February 1 maturity date. (Id. at 15.) BR Summerlin requested an extension of the maturity date, at which point Greystone Bank agreed only if BR Summerlin assigned its rents to Greystone Bank and the Rosensons increased their personal guarantees from twenty-five to one hundred percent. (Id. at 16.) According to the Rosensons, they had no choice but to agree to these terms because they could not sell the property or obtain alternative financing in the short time before the maturity date. (Id.)

The Rosensons allege that by March 2010, it became clear that Greystone Bank was not going to be able to obtain HUD financing for BR Summerlin, and Greystone Bank began demanding BR Summerlin obtain alternative financing or sell the property by the new maturity date in June 2010. (Id.) In April 2010, the Rosensons obtained an offer for $12 million in refinancing, but they allege Greystone Bank refused to finance the remaining $3 million, and thus the $12 million loan offer failed. (Id.)

As stated above, Greystone Bank subsequently initiated foreclosure proceedings, and BR Summerlin filed for bankruptcy. BR Summerlin's bankruptcy filing imposed the automatic stay on Greystone Bank's foreclosure filing. (Id. at 17.) The bankruptcy case is proceeding in this district. (Id.) Based on these allegations, the Rosensons assert counterclaims in this action for negligence, professional negligence, breach of fiduciary

duty, negligent misrepresentation, constructive fraud, and breach of the covenant of good faith and fair dealing in both tort and contract.

Plaintiff/CounterDefendant Greystone Bank now moves to dismiss the Rosensons' counterclaims. First, Greystone Bank argues that the Court should dismiss all of the counterclaims for lack of subject matter jurisdiction because the Rosensons have named the wrong party as counterdefendant. According to Greystone Bank, a 2009 engagement letter demonstrates a separate company, Greystone Servicing Corp., Inc. ("Greystone Servicing"), promised to obtain HUD financing for BR Summerlin. Greystone Bank thus argues it is not the proper counterdefendant. Second, Greystone Bank argues that the counterclaims fail to state a claim because the claims seeking affirmative relief against Greystone Bank belong to BR Summerlin, not the Rosensons.

**II. MOTION TO DISMISS (Doc. #10)**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. Bell Atl. Corp. v Twombly, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Id. at 555.

**A. Subject Matter Jurisdiction**

Greystone Bank relies on two contentions for its position that it is not the proper defendant: (1) the 2009 engagement letter shows it was Greystone Servicing, not Greystone

4

Bank, that agreed to obtain HUD financing for BR Summerlin; and (2) Kutner was not employed by Greystone Bank. As to the first contention, even if the Court considered the unauthenticated 2009 engagement letter attached to Greystone Bank's motion to dismiss, it does not support dismissal of the Rosensons' claims. The Rosensons allege misrepresentations dating back to 2007. A 2009 engagement letter thus would have little bearing on those allegations. Further, even if Greystone Servicing made misrepresentations to BR Summerlin, that does not preclude the possibility that Greystone Bank also made misrepresentations. Additionally, Greystone Bank provides no argument or evidence about the relationship between Greystone Bank and Greystone Servicing. Thus, the Court cannot determine at this stage of the proceedings whether Greystone Bank is liable for any misrepresentations made by Greystone Servicing. With respect to the second contention, Greystone Bank states that Kutner was never its employee, but it provides no evidence to that effect. Consequently, the Court will disregard this statement.

Viewing the facts pled in the counterclaims in the light most favorable to the Rosensons, the Rosensons have pled facts sufficient to support a plausible entitlement to relief against Greystone Bank. The Court therefore will deny the motion to dismiss on this basis.

**B. Lack of Standing**

Greystone Bank next argues the Rosensons lack standing to bring the asserted counterclaims because those claims belong to the debtor, BR Summerlin, not the Rosensons individually as members of the limited liability company. Greystone Bank contends that any representations made to Bernard Rosenson were made to him in his capacity as manager of BR Summerlin. Greystone Bank notes that in the bankruptcy proceeding, BR Summerlin has retained its causes of action. Greystone Bank thus contends BR Summerlin is the real party in interest. Greystone Bank argues the Rosensons can raise affirmative defenses to Greystone Bank's claims against them, but cannot assert independent causes of

action against Greystone Bank.

The Rosensons respond that they have both direct and derivative claims against Greystone Bank. As for direct claims, the Rosensons contend that they are not bringing suit as members of the LLC, but as guarantors based on misrepresentations made directly to them based on their own personal contracts with Greystone Bank. The Rosensons note that Greystone Bank made the alleged misrepresentations to Bernard Rosenson, both as manager of BR Summerlin and as a personal guarantor. The Rosensons also contend they can bring BR Summerlin's claims derivatively because they are BR Summerlin's sole members and BR Summerlin is insolvent.

Viewing the facts pled in the counterclaims in the light most favorable to the Rosensons, the Rosensons have alleged sufficient facts to support a plausible entitlement to relief against Greystone Bank. The counterclaims allege Greystone Bank made misrepresentations to Bernard Rosenson that induced the Rosensons to agree to the loan as managers for or members of BR Summerlin, and also to enter into personal contracts directly with Greystone Bank as guarantors. (Ans. & Countercl. at 14 ("Based on Greystone's representations that the HUD application would be successful, the Rosensons signed a personal guarantee for 25% of the Bridge Loan."); see also id. at ¶¶ 53, 56, 58-59, 67, 69-71, 76, 81-83, 90-92, 95, 99-100, 104-06, 113, 117-19.) The Rosensons thus allege a direct injury to themselves independent of harm to BR Summerlin. Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago, 877 F.2d 1333, 1336-37 (7th Cir. 1989) ("When [guarantors] suffer direct injury–injury independent of the firm's fate–they may pursue their own remedies."). Greystone Bank's arguments that Bernard Rosenson was acting only as manager of BR Summerlin, or that the Rosensons seek damages only as members of the limited liability company for harm to the company, are meritless. Each of the Rosensons' counterclaims are directed at their personal liability under the guarantees. The Court therefore will deny the motion to dismiss.

**III.  MOTION TO AMEND (Doc. #17)**

The Rosensons move to amend their Answer and Counterclaim, seeking to add Greystone Servicing as a party, to assert intentional misrepresentation claims, and to add affirmative defenses of offset, non-disclosure, and failure of consideration.  Greystone Bank does not oppose amendment to add the affirmative defenses.  (Opp'n to Mot. for Leave to File First Am. Ans. & Countercl. (Doc. #25) at 11.)  However, Greystone Bank opposes amendment to add Greystone Servicing and intentional misrepresentation claims because Greystone Bank will have to litigate the same issues in two forums, here and in BR Summerlin's bankruptcy proceeding.  Greystone Bank also argues the motion is made in bad faith because the Rosensons knew that BR Summerlin was proposing a reorganization plan under which it would retain its own causes of action in the underlying bankruptcy proceeding.  Finally, Greystone Bank argues amendment is futile because the Rosensons lack standing, as argued above.

The Rosensons respond that the Court should reject Greystone Bank's complaints about having to defend in two forums because Greystone Bank initiated this action after the bankruptcy proceeding had commenced, and thus it created the situation of litigation in two forums.  The Rosensons also argue they have acted in good faith because Greystone Bank made the alleged misrepresentations directly to Bernard Rosenson as a guarantor, and also because it was Greystone Bank's own arguments in moving to dismiss which led the Rosensons to move to add Greystone Servicing as a new party.  The Rosensons argue there is no undue delay or prejudice, as this case is in its infancy.  Finally, the Rosensons argue their new claims are not futile, reiterating their above arguments that they have direct and derivative claims against Greystone Bank and Greystone Servicing.

Generally, a party may amend his or her pleading once "as a matter of course" within twenty-one days after serving it, or twenty-one days after service of a responsive pleading or motion.  Fed. R. Civ. P. 15(a)(1).  In all other cases, a party may amend its

7

pleading only by leave of court or by written consent of the adverse party.  Fed. R. Civ. P. 15(a)(2).  "The Court should freely give leave when justice so requires."  Id.; see also Foman v. Davis, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.").  Courts consider five factors to assess whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the moving party previously has amended his pleading.  Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011).  Whether to grant leave to amend lies within the district court's discretion.  Zivkovic v. So. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002).

        The Court, in its discretion, will grant leave to amend.  The Rosensons have not amended their counterclaims previously.  The Court concludes there is no evidence of bad faith.  Although the Rosensons knew when they moved to amend in this action that BR Summerlin's proposed plan of reorganization calls for BR Summerlin to retain certain litigation claims, the Rosensons have presented non-frivolous arguments as to why they nevertheless may assert direct and derivative claims in this action.  They therefore have not acted in bad faith by moving to amend.

        Additionally, there is no undue delay, as this action is in its early stages.  Greystone Bank has identified no prejudice other than having to litigate in two forums, but Greystone Bank chose to bring this action in this Court after the bankruptcy petition already was filed.  It was Greystone Bank that initiated litigation in a second forum, not the Rosensons, and the Rosensons are entitled to assert any available defenses and counterclaims to claims brought against them.  As discussed above, the Rosensons claims are not futile because they sufficiently have pled facts supporting a plausible entitlement to relief on claims against Greystone Bank and Greystone Servicing.  The Court therefore will grant the motion to amend.

## IV. CONCLUSION

      IT IS THEREFORE ORDERED that Plaintiff/Counterdefendant Greystone Bank's Motion to Dismiss Counterclaims (Doc. #10) is hereby DENIED.

      IT IS FURTHER ORDERED that Defendants/Counterclaimants Bernard Rosenson and Cynthia Rosenson's Motion for Leave to File First Amended Answer and Counterclaim (Doc. #17) is hereby GRANTED.

      IT IS FURTHER ORDERED that Defendants/Counterclaimants Bernard Rosenson and Cynthia Rosenson shall file their first amended answer and counterclaim within ten (10) days of the date of this Order.

DATED: September 15, 2011

_____
PHILIP M. PRO
United States District Judge